Abbaham I. Kalina, J.
This is a motion for an order, pursuant to paragraph (h) of subdivision 1 of CPL 210.20 et seq. to dismiss the indictments herein, or in the alternative, for an evidentiary hearing on the issue of whether cocaine has been misclassified as a narcotic drug pursuant to article 220.00 of the Penal Law.
The defendants do not challenge the constitutional authority of the Legislature to regulate' or even to criminalize any narcotic or otherwise, where a rational basis for the legislative classifications established is shown. What defendants do challenge is the classification of cocaine as a “ narcotic ” drug, not merely with the narcotic drugs.
The defendants further contend that the classification of cocaine as a narcotic drug was a mistake when it was first made in the Harrison Narcotics Act of 1914 (38 U. S. Stat. 785) and it has' been perpetuated in State and Federal law ever since. It is further contended by the defendants that scientists are now, and have long been, in unanimous agreement that cocaine has fundamentally different effects and characteristics from the so-called narcotic drugs, and it is further claimed that the scientific community has found the effects of cocaine to be virtually identical to those of the amphetamines which ¡are treated in a different manner under our Penal Law.
Defendants further contend that the court can deny the motion without conducting a hearing only if the circumstances set forth in paragraphs (a) through (c) of subdivision 5 of CPL 210.45 exist.
The defendants have been indicted for criminal sale and possession of more than 16 ounces of cocaine and for conspiracy to sell and possess cocaine. The legal basis claimed on this motion is that the sections of the Penal Law which prohibit the sale and possession of cocaine are in violation of the due process, equal protection, and cruel and unusual punishment clauses of the United States Constitution.
The defendants herein raise the issue that the Legislature has misclassified cocaine as a “ narcotic drug.” It is true that, medically and pharmacologically, cocaine is not a narcotic drug in the true sense; however, the terminology used by the Legislature was not in this sense. The term ‘ ‘ narcotic drug ’ ’ as used by the Legislature was for those drugs which were the *566 most dangerous and include all the drugs the Legislature considered as such. It should, be noted that in enacting article 220 of the revised Penal Law in 1967. the Legislature titled part three of the Penal Law, “ Title M — Offenses against Public Health and Morals — Article 220 — Dangerous Drug Offenses.” In fact, the Legislature prior to the enactment of the statute in question was fully aware that cocaine was not truly narcotic, and still determined to classify cocaine in the same manner as true narcotic drugs, based on the numerous studies, reports and public hearings conducted by the Temporary State Commission to Evaluate the Drug Laws, as to the dangers of cocaine and the necessity of regulating its illegal distribution and nonmedical use.
The Legislature was advised by the Temporary State Commission to Evaluate the Drug Laws, through its interim report (N. Y. Legis. Doc., 1972, No. 10, p. 67) that, “ Although cocaine is a stimulant, rather than a narcotic, it has been generally considered as a narcotic for purposes of regulating its non-medical use. The abuse patterns and potential are somewhat different; however, the differences are not sufficient to warrant separate or different treatment of cocaine in the penal provisions.” The report further 'stated, “ The existing penalty structure for cocaine and the ‘ hard narcotics ’ has been subject to constant periodic reappraisal by the legislature. The. most recent changes-were the amendments in 1969 which created the A and B felony possession and sale offenses. Our reappraisal of the provisions relating to these drugs confirms the appropriateness of the existing degree structure in all respects but one. We believe the A and B felony possessory weights are too restrictive in that they pertain only to heroin, morphine, cocaine and raw or prepared opium.”
As to classification, it is really irrelevant whether cocaine is a narcotic in the strict medical sense. There had been enough medical evidence as well .as law enforcement evidence submitted to find a reasonable basis for the Legislature to regulate cocaine and to treat it in the same manner as it treats other drugs, including, but not exclusive of opium derivatives.
‘ ‘ In schedule H, we include those, substances which have a high potential for abuse, but also have an accepted but restricted medical use. Abuse of a schedule II substance may lead to severe psychological or physical dependence. Included within this group are cocaine and opium derivatives or abusable congeners, such as morphine, Demerol, codeine in high concentrations, and methadone.” (Interim' Report of Temporary State *567 Commission to Evaluate the Drug Laws; N. Y. Legis. Doc., 1972, No. 10, p. 13.)
The Legislature has used the term broadly but has clearly indicated exactly which drugs it has called “ narcotic ” and which drugs are prohibitive (see Penal Law, '§ 220.00 et seq.; Public Health Law, §§ 3301, 3306; see Connecticut v. Ringo, 5 Conn. Cir. 134).
We now come to the point whether this classification of cocaine by the Legislature as a “ narcotic drug ” violated the defendant’s rights to equal protection. The defendants urge that * ‘ this Court must examine the classification scheme under a strict scrutiny test, and must declare the statute unconstitutional unless it finds a high degree of rationality or compelling governmental interest in the classification of cocaine as a narcotic drug.”
The court cannot adopt this position and is of the opinion that the test to determine the unconstitutionality of the classification is one of “ rationality ” and “ reasonableness.”
“ So it is the duty of courts to adopt a construction of a statute that will bring it into harmony with the Constitution and with legislative intent, and no narrow construction of a statute may thwart the legislative design.” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 92.)
In United States v. Kiffer (477 F. 2d 349, 352-353) the court stated: ‘ Reflecting this judgment, courts usually review challenged legislative acts with the understanding that they are presumed valid and will be so found unless it is shown that the statute in question bears no rational relationship to a legitimate legislative purpose. E.g., Williamson v. Lee Optical, Inc., 348 U. ,S. 483, 485-488, 75 S. Ct. 461, 99 L. Ed. 563 (1955); United States v. Carolene Products Co., 304 U. S. 144, 152-154, 58 S. Ct. 778, 82 L. Ed. 1234 (1938). The only cases that require a stricter standard of review are those that involve an infringement of a right explicitly enunciated in the Constitution or otherwise recognized as fundamental. E.g., Roe v. Wade, 410 U. S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973); Griswold v. Connecticut, 381 U. S. 486, 85 S. Ct. 1678,14 L. Ed. 2d 510 (1965); Aptheker v. Secretary of State, 378 U. S. 500, 505-514, 84 S. Ct. 1659, 12 L. Ed. 2d 992 (1964). See United States v. Carolene Products Co., supra, 304 U. S. at 152-153 n. 4, 58 S. Ct. 778, 82 L. Ed. 1234. * * * Since there is no colorable claim of a fundamental constitutional right to sell marihuana — even partisans of the old economic due process analysis might blush at that notion — appellants must establish that prohibition of com *568 mercial distribution of marihuana lacks any reasoned justification. They have not succeeded in doing so.”
. In Fenster v. Leary (20 N Y 2d 309, 314), the court stated, “ Initially, it must be observed that :a strong presumption of validity attaches to statutes and the burden of proving invalidity is upon those who challenge their constitutionality to establish this beyond a reasonable doubt (see Matter of Van Berkel v. Power, 16 N Y 2d 37, 40, and the cases cited therein), but it must likewise be noted that a statute whose effect is to curtail the liberty of individuals to live their lives as they would and whose justification is claimed to lie in the exercise of the police power of the State must bear a reasonable relationship to, some proportion to, the alleged public good on account of. which this restriction on individual liberty would be justified. As Judge Ftjld (as he was then) observed in People v. Bunis (9 N Y 2d 1, 4), “ The police power is ‘ very broad and comprehensive ’ and in its exercise ‘ the conduct of an individual and the use of property may be regulated so as to interfere, to some extent, with the freedom of the one and the enjoyment of the other ’ * * * But, in order for
an exercise of the police power to be valid, there must be ‘ some fair, just and reasonable connection ’ between it and the promotion of the health, comfort, safety and welfare of society.’ ” In State of Arizona v. Wadsworth (109 Ariz. 59; 505 P. 2d 230, 234-235) the Supreme Court of Arizona stated: “ The legislative intent in this State was to proscribe the use of marijuana, not to scientifically categorize it according to its composition and effect, and we believe there was a reasonable basis for the classification of marijuana with the narcotic drugs rather than the dangerous drugs * * *
“We have stated: ‘ This court is not concerned with the wisdom of the [legislation] nor may we .substitute our judgment for that of the legislature in its choice of method of enforcement # * *. Our inquiry is limited to the question of whether the Act contravenes the state and federal constitutions. Wisdom, necessity, propriety or experience of the Act are matters exclusively within the province of the legislature. [Citing Skaggs Drug Center, Inc. v. United States Time Corporation, 101 Ariz. 392, 397, 398, 420 P. 2d 177, 182, 183 (1966.)] *.y. .y.
‘ ‘ It should be noted that the defendant does not contend that the legislature lacks the power to prohibit the sale, use or possession of marijuana, but questions the legislative classification with the ‘ attendant draconian penalties.’ Accepting the *569 proposition, as defendant does, that the legislature may, undér the police power, prohibit the use of marijuana, it follows that stronger penalties designed to prevent the present widespread use of marijuana are reasonable. We may doubt whether the legislation is wise and does in fact accomplish the ends desired, but we cannot constitutionally question the reasonableness of the legal classification and the resulting penalty.”
The court is of the opinion that there is sufficient evidence to show a rational and reasonable basis for the Legislature to classify cocaine as a “ narcotic drug ” and to regulate its sale, possession and use and is of the further opinion that the legislative action bears a real and • substantial relation to public health, safety, morals and the general welfare and was a valid exercise of the police power of the State (cf. People v. Daneff, 30 N Y 2d 793, remittitur amd. 31 N Y 2d 667, cert. den. 410 U. S. 913).
Both sides have submitted affidavits by medical and scientific experts exhibiting varying degrees of differences of opinion as to the effects of cocaine on its users.
“ The physical effects of cocaine withdrawal are minor. This has led many authorities, mistakenly, to classify cocaine as a non-addicting drug. However^ cocaine withdrawal is characterized by a profound psychological manifestation — depression — for which cocaine itself appears to the user to be. the only remedy * * * Moreover, cocaine addiction can lead to a severe psychosis while the user is still on the drug. This is in contradistinction to the opiate withdrawal syndrome and to the delirium tremens of alcoholism or barbiturate addiction, which set in hours or days after the drug is withdrawn * * * Since 1914, the possession, sale, and giving away of cocaine have been subject to the same, dire federal penalties as those governing morphine and heroin; and most state laws similarly identify cocaine as a ‘narcotic’.” (Licit and Illicit Drugs, Consumers Union Report [1972], p. 276.)
To hold an evidentiary hearing on this question would put this court in the position of deciding between different opinions by scientific experts on both sides. It would require a rather extensive inquiry and investigation. This is a function more suited to a Legislature than to an individual Judge in a limited courtroom hearing. In fact, numerous public hearings were conducted by the Temporary State Commission to Evaluate the Drug Laws and their findings were reported to the Legislature and each report stated that cocaine should be *570 treated in the same category as heroin and other true narcotic drugs and the Legislature acted accordingly.
‘1 Every presumption will be indulged in to support and sustain legislation, and it will be assumed that the Legislature intended to enact a statute which is in harmony with the federal and state constitutions ” * * There is also a rebuttable presumption of the existence of the necessary factual support for its provisions which was known to the Legislature.” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150.)
Recently, Mr. Justice J. Irwin Shapiro, in writing the opinion for the court in Matter of Collum v. O’Mara (43 A D 2d 140, 145-146) stated, “We begin by noting that a strong presumption of constitutionality attaches to all legislation (Wasmuth v. Allen, 14 N Y 2d 391, 397; Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, 540) and that there is a further presumption that the Legislature has investigated and found the facts necessary to support the legislation (I. L. F. T. Co. v. Temporary State Housing Rent Comm., 10 N Y 2d 263, 269; Lincoln Bldg. Assoc. v. Barr, 1 N Y 2d 413). Those who attack the constitutionality of legislative enactments must demonstrate their invalidity beyond a reasonable doubt (People v. Pagnotta, 25 N Y 2d 333, 337). The enactments will be struck down only as a last and unavoidable resort (Nettleton Co. v. Diamond, 27 N Y 2d 182, 193; Matter of Van Berkel v. Power, 16 N Y 2d 37, 40) * * * since only a clear violation of the Constitution will justify the court’s overruling of the legislative will (Farrington v. Pinckney, 1 N Y 2d 74, 78; Matter of Ricker v. Village of Hempstead, 290 N. Y. 1, 5).”
Accordingly, the motion is denied in all respects.