In the Matter of JAMES H. RICKER, Appellant, against THE VIL-
LAGE OF HEMPSTEAD et al., Respondents.

Argued November 24, 1942; decided March 4, 1943.

*Manuel W. Levine, Ira G. Goodman* and *Alphonso M. La Pera* for appellant.

*C. H. Tunnicliffe Jones* and *Albert B. Humphrey* for respondents.

LOUGHRAN, J. By chapter 598 of the Laws of 1940, section 188-1 of the Village Law was amended as of April 18, 1940, by the addition thereto of the following provision: " Village policemen who are employed at the time this act, as hereby amended, takes effect, and who were employed at the time the rules of the state civil service commission were extended to the police department of the village in which they are employed, shall continue to hold their positions without further examination and shall be removed only upon compliance with the provisions of section one hundred eighty-eight-f of this chapter." Section 188-f provides that — except in situations not here presented — no member of a village police force shall be removed until written charges against him have been heard. This proceeding under article 78 of the Civil Practice Act calls upon us to determine the constitutional validity of the exemption from examination so declared.

Petitioner joined the police force of the village of Hempstead as patrolman in 1918. He was given the rank of sergeant in 1922 and that of lieutenant in 1924. He was made chief of police on October 1, 1935. He never was examined respecting his fitness for any of these posts, in as much as the rules of the State Civil Service Commission were not extended to the village of Hempstead until January 5, 1937. On April 7, 1941, the trustees of the village summarily removed him from

his position as chief of police and nullified his membership in the local police department.

On the undisputed facts, this summary termination of the petitioner's employment was forbidden by the words we have quoted from section 188-1 and the only question for decision is whether the Legislature thereby plainly transgressed the civil service principle of the State Constitution, as the courts below have held. The relevant text of the Constitution is found in section 6 of article 5. It is thereby provided: "Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive."

For many years after its adoption as part of the Constitution of 1894, this command was not brought to bear upon appointments of village policemen. Not until 1939, was the State Civil Service Commission able to report that its rules had recently been extended to the police departments of all the villages of the State (56th Annual Report of the Commission, p. 3). The occasion of this delay in carrying out the fundamental law was not obscure. " The Civil Service Commission had always believed that it was within their power and discretion to extend the jurisdiction of the Civil Service Law and Rules when it was 'practicable' to do so. And by ' practicable ' the Commission meant, in taking an over-all view, whether there were fields of sufficient competition in a community, whether their budgetary appropriations were sufficient to defray the costs and whether the limited staff could possibly absorb the extra work load." (59th Annual Report of the Commission, p. 22). Thus it came to pass that the position of this petitioner was in effect within an exempt class of the civil service at the time of his appointment, because up to that time the State Civil Service Commission had found it impracticable to order competitive examinations in that field.

The problem faced by the Commission stretched out to all the civil divisions of the State. Villages, of course, were not among the larger and more complex units of government whose civil service needs were the most pressing. (*Matter of Madden*

v. *Reavy,* 284 N. Y. 418.) Not only so, but the immediateness of life in small communities was perhaps an adequate temporary guaranty against unfit appointments to a local police force. There is good reason, then, why we should not take it on ourselves to denounce the course adopted by the Commission as palpably arbitrary or an outright abuse. The reports of the Commission were matter of public record and furnished a basis for action by the Legislature. Against this background, the foregoing " covering-in " provision of section 188-l cannot be said to have been such a clear usurpation by the Legislature of prohibited power as must be found before a statute can be pronounced unconstitutional and void. Thus regarded, the above words of section 188-l are a valid enactment, and so we here adjudge.

*Matter of Andresen* v. *Rice* (277 N. Y. 271) was a different case. The Legislature had there made an unwarrantable attempt permanently to exempt the entire membership of the State Police from competitive examinations irrespective of the practicability thereof. The present case is closer to the implications of *Matter of Fornara* v. *Schroeder* (261 N. Y. 363) where this court gave effect to a finding by civil service authorities of the impracticability at one time of competitive examination as a test of fitness for the appointment of a superintendent of street cleaning, though no expressed legislative policy had indorsed such an exemption.

We have not overlooked section 188-c of the Village Law. Choice of the petitioner for head of the police department of the village of Hempstead apparently was not a promotion within the meaning of that section.

The orders should be reversed and the motion to dismiss the petition denied, without costs, and the matter remitted to the Special Term for further disposition not inconsistent with this opinion. (See 290 N. Y. 862.)

LEHMAN, Ch. J., FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Ordered accordingly.