THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ABBOTT MANOR NURSING HOME et al., Respondents.

Fourth Department, November 2, 1979

## APPEARANCES OF COUNSEL

*Melinda A. Bass (Gary Eichenbaum* of counsel), for appellant.

*Miller, Farmelo, Cane & Greene (Norman E. S. Greene* of counsel), for respondents.

## OPINION OF THE COURT

WITMER, J.

■ The proponents of court unification may well use this case as an argument in support of their efforts. Among the many issues presented herein, the principal one is that of jurisdiction. Because the Supreme Court does not have jurisdiction of claims against the State of New York, we modify the judgment from which the State appeals.

Abbott Manor Nursing Home (the Home), one of the defendants herein, was owned by Bernard P. Birnbaum to whom the State had issued a license for its operation. He died on February 13, 1976. The executors of his will, having no license to continue operating the Home nor authority from the Surrogate to do so, sought to close it. After some unfruitful negotiations with the State Department of Health the executors notified the patients of the Home and their responsible relatives in August, 1976 that the Home would soon be closed and that they should arrange to move out. Apparently because other facilities for the patients of the Home were not available, the State instituted an action against the executors for an order enjoining them from closing the facility. The executors interposed an answer in which they asked the court (1) to appoint a receiver to operate the Home to protect the patients therein and the interests of the Birnbaum estate, because of the failure of the State Department of Health to agree upon a receivership under section 2810 of the Public Health Law (and see Social Services Law, § 461-f), (2) for a judgment declaring that the duty of the Home to continue operation ceased on the death of the owner-licensee on February 13, 1976 and that from that date onward the executors have continued the operation of the Home at the insistence of the State Department of Health, and (3) that, therefore, the estate is entitled to be compensated for its actual costs for providing the services for the patients therein until it be permitted to close, and that the court should award it damages in payment thereof. The executors seek not only the fair rental value of the facility since the death of their testator but the inventory value of the personal property used in its continued operation and also recovery of the losses sustained by the Home in such operation.

As of October 20, 1976 the court appointed two long-time employees of the Home as coreceivers thereof, with powers of receivers appointed under section 2810 of the Public Health

Law. In doing this the court stated that it was exercising its equitable powers and recognized that the statutes do not provide for a receivership when a licensed operator dies. The court denied the State's application for an injunction against defendants' closing the Home, the directions to the receivers making an injunction unnecessary. The court also denied for 90 days the executors' request for a hearing to determine the fair rental value of the facility and the value of the inventory used in its continued operation, with the condition that if the Commissioner of Health should fail to compensate the estate for its actual operating costs, including rental value and value of the inventory, the executors could re-apply for a hearing with respect thereto. The order also denied the executors' application for payment to the estate of certain Medicaid, Medicare and other payments for October, 1976; the court recognized therein that such funds belong to the estate, but it authorized the receivers to use them, subject to a hearing after 90 days with respect to them and other items in the executors' counterclaims.

When the commissioner denied the executors' claims, the executors and receivers in December, 1976 moved for a hearing for determination of the compensation to be paid to them by the Department of Health during the receivership, and for an accounting by the receivers. The court then conducted an extensive hearing thereon, and on December 29, 1976 it ruled that the commissioner must pay to the receivers the actual costs of operating the Home, including a fair rental for the facility and the value of the inventory. The State's prompt appeal from that order stayed its operation (CPLR 5519, subd [a], par 1). Nevertheless, the receivers continued to operate the Home. More than a year later the executors and receivers moved to vacate the automatic stay, and it was vacated. Still the commissioner failed to obey the court's order.

In April, 1978 defendants moved to compel the commissioner to comply with the order of December 29, 1976, and the court held a lengthy hearing thereon. It then terminated the prior receivership and appointed the State Commissioner of Health as receiver and directed him to comply with the court's written decision of March 6, 1978, embodied in its order of May 25, 1978, and reduced to judgment on July 21, 1978, from which the State appeals.

The judgment granted to the executors the sum of $416,714 plus interest and costs, exclusive of additional claims asserted

by them in their counterclaim for losses after February 13, 1976 and prior to the appointment of the receivers on October 20, 1976, as to which the State at that time had not yet interposed its reply. The award included allowances for rent of the facility, real estate taxes and insurance, reimbursement for money advanced to the receivership by the estate for payroll, administration, workmen's compensation, etc., and also reimbursement for the value of the inventory and for Medicaid and Medicare and private patient fees, together with interest thereon to July 1, 1978.

The State's principal brief on appeal addresses the merits of the trial court's determinations. In its brief in reply to defendants' brief, however, for the first time the State argues that the trial court lacked jurisdiction to entertain the claims against the State and to render judgment against the State, citing subdivision 4 of section 9 of the Court of Claims Act.

■ Without doubt, Supreme Court had jurisdiction to determine the administrative issues between the commissioner and the estate *(Board of Educ. of North Colonie Schools, Newtonville v Levitt,* 42 AD2d 372, 374; and see *Matter of Fehlhaber Corp. v O'Hara,* 53 AD2d 746; *Matter of Pfingst v Levitt,* 44 AD2d 157, mot for lv to app den 34 NY2d 518). With respect to such items properly demanded of the commissioner by defendants in their counterclaim, however, the latter should be deemed converted into an article 78 proceeding, and we so treat it.

The executors' claims, however, go far beyond items properly considered in an article 78 proceeding. The executors allege in their answer and counterclaims that in order to induce them to keep the Home in operation representatives of the State agreed to pay them a fair rental for their facility and the fair value of the inventory used in connection therewith, and they seek other reimbursements and damages.

■ ■ We believe that in the circumstances of this case, absent specific statutory authority (see Public Health Law, § 2810), Trial Term properly assumed jurisdiction to exercise its equitable powers to appoint a receiver and direct that the operation of the Home be continued thereunder for the protection of the patients (see *Covington Drawbridge Co. v Shepherd,* 21 How [62 US] 112, 125; *Davis v City of New York,* 49 AD2d 874; *Toler v Toler Convalescing Home,* 236 Ark 24, 32-33, adopting opn of the Chancellor; 13 Carmody-Wait 2d, NY Prac, §§ 83:2, 83:6; Brown, An Appraisal of the Nursing Home

Enforcement Process, 17 Ariz L Rev 304, 339-341; Grad, Upgrading Health Facilities: Medical Receiverships as an Alternative to License Revocation, 42 Univ of Col L Rev 419; cf. Public Health Law, § 2810; and Social Services Law, § 461-f). Such jurisdiction, however, did not authorize the court to determine the consequent issues as to who should bear the operating losses not governed by regulations for patient care allowances and Medicaid, Medicare and patient fee payments. The Court of Claims has exclusive jurisdiction of issues as to the State's liability for tort and contract claims, whether the claims are asserted in an original action or by way of counter-claim *(People v Dennison,* 84 NY 272, 280-281; Siegel, New York Practice, § 17). The State's sovereign immunity from suit has been waived only to the extent of permitting such claims to be adjudicated in the Court of Claims *(Easley v New York State Thruway Auth.,* 1 NY2d 374; *Belscher v New York State Teachers' Retirement System,* 45 AD2d 206, 208; and see *Matter of T.P.K. Constr. Corp. v O'Shea,* 69 AD2d 316; *Olmstead v Britton,* 48 AD2d 536, 538). The State Department of Health is not a separate legal entity as are some State-created public corporations (see *Grace & Co. v State Univ. Constr. Fund,* 44 NY2d 84; *Cole v State of New York,* 64 AD2d 1023; *Story House Corp. v State of New York Job Dev. Auth.,* 37 AD2d 345, affd 31 NY2d 942; see Public Authorities Law, § 1002), but is a branch of the State government (Public Health Law, § 200). As such, disputes with it with respect to fair compensation must be adjudicated in the Court of Claims (see Public Health Law, § 401).

■ In light of defendants' allegations that responsible State officials represented to them that it was in the State's interest that operation of the Home be continued and that the State would appropriately compensate the estate therefor, and that in reliance thereon the executors sought the appointment of a receiver to continue the operation until the State could make other arrangements for the patients in the Home, we conclude that defendants have bona fide issues to present to the Court of Claims.

It is unfortunate that the issue of jurisdiction herein was not raised before the case reached us on appeal. It presents the practical side issue as to whether defendants are now barred from relitigating their claims in the Court of Claims because of their failure to file a timely notice of claim in that court. Defendants argue, with much justification, that since

the State did not reply to their counterclaims for nearly two years, and did not raise the issue of jurisdiction until it served its reply brief on this appeal, it waived that issue. Why defendants did not move for judgment by default against the State on their counterclaims as to which the defendant had not replied is not revealed. Regardless of that, there is no doubt that the State has been involved in these issues from the beginning, and it has not been prejudiced in any way by the failure of the defendants to file a timely notice of claim.

■ ■ Belated as is the State's argument of lack of jurisdiction, we cannot hold that it has waived the jurisdictional question, and we conclude that the principal issues of defendants' claims must be litigated, if at all, in the Court of Claims. Nevertheless, to foreclose future legal proceedings on the question of notice of claim (Court of Claims Act, § 10, subd 4), we rule, *sua sponte,* that if the executors and other defendants choose to pursue such claims in the Court of Claims, they may file a notice thereof within 30 days of the entry of the order hereon, and the State will be estopped from moving to dismiss as barred by the Statute of Limitations (see *Salesian Soc. v Village of Ellenville,* 41 NY2d 521; *Bender v New York City Health & Hosps. Corp.,* 38 NY2d 662; Court of Claims Act, § 10, subd 6).

■ We find no merit in defendants' argument that the Commissioner of Health lacks standing to pursue the appeal in this action, begun by the Attorney-General. The record shows that a proper transfer was made to the commissioner for his continuance of the action.

The judgment should, therefore, be modified to delete all of the award to defendants except item 3 thereof (patient allowances of $199) and item 7 (Medicaid, etc., payments of $29,-650), totaling $29,849, plus appropriate interest, as to which the judgment should be affirmed, all without prejudice to defendants pursuing their remaining claims in the Court of Claims as above indicated.

DILLON, P. J., CARDAMONE, SIMONS and CALLAHAN, JJ., concur.

Appeal No. 1—Judgment and order unanimously modified on the law, and, as modified, affirmed, without costs in accordance with opinion by WITMER, J.

Appeal No. 2—Order unanimously affirmed.

Appeal No. 3—Appeal dismissed.