*2 OPINION OF THE COURT
Herman Cahn, J.
This is an article 78 proceeding brought by the five county clerks within New York City, seeking to enjoin respondents from implementing a lag of payment of their salaries as such lag has been implemented for other nonjudicial employees of the Unified Court System. Respondents are the Chief Administrative Judge of the courts of this State, and the Deputy Chief Administrator of the courts. Petitioners contend that implementation of a lag payroll as to them, pursuant to section 200 of the State Finance Law, as recently amended, is arbitrary and capricious, and contrary to law.
The lag payroll was agreed to in collective bargaining by unions representing nonjudicial employees of the Unified Court System, as a “give back” in exchange for salary increases. The payroll lag was thereafter extended to all nonjudicial employees in the judicial branch whether or not they had received salary increases. The executive branch similarly extended a payroll lag to all its officers and employees, including commissioners and agency heads, despite the fact they did not receive wage increases.
The immediate effect of the payroll lag is to extend the normal pay cycle by one day each pay period until one full payroll of 10 working days has been lagged or skipped. The pay so withheld is to be paid to the employee at the time he leaves State service, at the rate of pay the employee is then earning.
Respondents contend that petitioners are properly subject to the lag based upon the recent amendment to section 200 of the State Finance Law. Chapter 353 of the Laws of 1982, which amended the State Finance Law, provides the authority to adopt a lag payroll for “nonjudicial” officers and employees of the Unified Court System. The amendment covers both employees subject to collective bargaining and those who are not.
It is argued that petitioners are “State” or “constitutional officers” and as such may not be subject to a lag payroll, regardless of the fact that by a broad stroke of draftsmanship all nonjudicial officers and employees of the *3 Unified Court System are seemingly subject thereto. Section 7 of article XIII of the New York State Constitution states, in part, as follows: “Each of the state officers named in this constitution shall, during his continuance in office, receive a compensation, to be fixed by law, which shall not be * * * diminished during the term for which he shall have been elected or appointed”. Thus, the threshold issue for determination is whether petitioners are “state officers” falling within the scope of this constitutional provision, and if so, whether a lag in paying their salary constitutes a diminution in compensation.
County clerks are indeed “state officers”, in the way the Constitution uses the term. First of all, they are specifically mentioned in the Constitution, and the method of their designation is set by the Constitution. (See NY Const, art XIII, § 13, subd [a].) “Although the term ‘state officer’ is nowhere defined in the Constitution, judicial interpretations of this provision have included within its scope Sheriffs * * * registers * * * county clerks (Finn v City of New York, 282 NY 153)” (Matter of Kelley v McGee, 57 NY2d 522, 534). That the county clerks have historically been denominated State officers was also made clear by the Court of Appeals in Olmsted v Meahl (219 NY 270), wherein the court stated at page 276: “The decisions of the courts are numerous that in substance sustain the conclusion that a county clerk when actually engaged as a clerk of the courts and his special deputies acting in his behalf as such court clerks are part of the judicial system of the state and state officers. (Quin v. Mayor, etc., of N.Y., 44 How. Pr. 266; affd., 53 N.Y. 627; Whitmore v. Mayor, etc., of N.Y., 5 Hun, 195; affd., 67 N.Y. 21; Landon v. Mayor, etc., 39 Superior Court, 467; People ex rel. Phelps v. Court of General Sessions of the County of New York, 13 Hun, 395; Taylor v. Mayor, etc., of N.Y., 67 N.Y. 87, 93; Stewart v. Mayor, etc., of N.Y., 15 App. Div. 548; People ex rel. Gilchrist v. Murray, 73 N.Y. 535; Slavin v. McGuire, 205 N.Y. 84; Schieffelin v. Komfort, 212 N.Y. 520.)” The county clerks have similarly been termed “constitutional officers”, which term is equally without precise meaning. (See Finn v City of New York, supra; Olmsted v Meahl, supra, p 275; Eberhard v City of New York, 163 Misc 370.)
*4 It is thus clear that the county clerks both within and outside the City of New York are State officers within the mandate of section 7 of article XIII of the New York State Constitution and that as such State officers shall receive compensation fixed by law which may not be diminished during the term of office for which they were appointed. The sole issue remaining is whether the pay lag or the effects thereof in fact amount to an illegal diminution of salary.
The county clerks’ salary is controlled by subdivision 2 of section 908 of the County Law. Said section provides that the county clerks within the City of New York be paid “an annual salary of not less than the compensation received by a judge of the civil court of the city of New York.” Civil Court Judges as well as petitioners are, at the present time, paid an annual salary of $57,299. Civil Court Judges are not subject to the payroll lag.
It is respondent’s position that petitioners have suffered and will suffer no actual diminution of salary and that the county clerks continue to earn as much as Civil County Judges. They argue that there has been no change in the county clerk’s annual salary, just a change in the method or timing of the payments.
While it is undisputed that the two weeks’ lagged salary has not been forfeited but will be paid to petitioners when they leave State service, at the salary rates in effect at that time, it seems clear that the pay lag reduces and diminishes the compensation earned by the county clerks in calendar year 1982. Regardless of the fact that at the time the county clerks leave State service they may be compensated for said controversial two-week period at a higher rate, no long-term arithmetical computation changes the fact that as a direct result of the lag, petitioners will receive less salary than Civil Court Judges in calendar year 1982.
Neither side has cited any cases on this point, and the court has not found any. However, it is clear that delaying a portion of one’s compensation for an indefinite time, perhaps months, perhaps years, is a diminution thereof. Reduced to its simplest terms, the question is whether at *5 the end of the year, the county clerks have been paid the annual salary set forth in the statute, as paid in prior years, or whether they have been paid less. It is apparent that the lag law as sought to be applied to them would require that they be paid less, and thereby they would have their compensation diminished.
To apply the lag law to the petitioners would be contrary to the constitutional mandate, and therefore arbitrary and capricious. While “[a] reduction in the salary of a constitutional officer other than one whose compensation is fixed by the Constitution itself may be made at any time if the reduction is to be effective only as to those assuming office thereafter” (Finn v City of New York, 282 NY 153, 157, supra), it is beyond purview that the county clerks’ salary is constitutionally protected during their tenure in office. (NY Const, art XIII, § 7.) See, also, Albert v City of New York (250 App Div 555), where an attempted salary reduction for the Sheriff of Bronx County was declared invalid.
Petitioners have further argued that if the lag law were applied to them, it would violate the provisions of subdivision 2 of section 908 of the County Law, setting this compensation. The court has not reached said argument, in view of its decision on the constitutional issue. However, were the court to consider it, it would be inclined to overrule said argument based on the provisions of section. 398 of McKinney’s Statutes (McKinney’s Cons Laws of NY, Book 1 [if two statutes are in irreconcilable conflict, the later one controls]).
Respondents further insist that the Comptroller is a necessary party to this proceeding pursuant to CPLR1001. Petitioners contend that on the oral argument for a stay at Special Term, Part II, the Attorney-General appeared on behalf of the Comptroller and stated that the Comptroller had no interest in this litigation. For this reason petitioners state that they did not make the Comptroller a party respondent. Moreover, the Comptroller’s function in this • instance is only the ministerial one of preparing paychecks at the request of respondents. No monetary award is being sought from the Comptroller (Davis v City of New York, 49 AD2d 874). What is being sought is a determination that *6 respondents have acted arbitrarily in including petitioners in the lag payroll. As such the Comptroller is. not a necessary party herein.
Respondents’ implementation of the payroll lag as to petitioners is arbitrary and capricious. Accordingly, the petition is granted.