UNITED STATES of America, Plaintiff,

v.

**DCS DEVELOPMENT CORPORATION,[1] Estate of Bernard P. Birnbaum, Saul Birnbaum and Janice Birnbaum, as Executors of the Estate of Bernard P. Birnbaum and New York State Commissioner of Health, Defendants.**

No. CIV–79–95.

United States District Court, W.D. New York.

Aug. 9, 1984.

**1.** Although defendant DCS Development Corporation was given until June 29, 1979 to respond to the Complaint it does not appear that an answer was ever filed or that plaintiff has sought the entry of default as to this party.

Jack S. Penca, Asst. U.S. Atty., Buffalo, N.Y., for plaintiff.

Robert Oppenheimer, Rochester, N.Y., Robert H. Kutzuba, Buffalo, N.Y., for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This is an action by the United States Department of Housing and Urban Development ("HUD") to foreclose a mortgage on the Abbott Manor Nursing Home ("the home") in Buffalo, N.Y. The New York

State Commissioner of Health ("the Commissioner") was made a defendant on the grounds that, at the time the Complaint was filed, a receiver was operating the home at the Commissioner's request. The Commissioner had been appointed receiver of the home pursuant to section 2810 of New York's Public Health Law May 8, 1978 by Order of New York Supreme Court Justice Theodore S. Kasler. *People of the State of New York v. Abbott Manor Nursing Home et al.*, 70 A.D.2d 434, 421 N.Y. S.2d 451 (4th Dept.1979), aff'd, 52 N.Y.2d 766, 436 N.Y.S.2d 614, 417 N.E.2d 1002 (1980). The Estate of Bernard P. Birnbaum and defendants Birnbaum, co-executors of the estate (collectively, "the Birnbaum defendants") have cross-claimed for money damages against the Commissioner, alleging various constitutional deprivations. The Commissioner has moved for summary judgment dismissing the Complaint on the grounds that the receivership is no longer in possession of the home and dismissing the cross-claims on Eleventh Amendment grounds.

The Commissioner supports the motion for summary judgment dismissing the Complaint principally by citation to my Order entered June 24, 1980 in this case, denying the Birnbaum defendants' motion to dismiss for lack of subject matter jurisdiction on the grounds that possession of the home had been transferred to them by a September 12, 1979 order of New York Supreme Court Justice James B. Kane in said state proceeding. The Commissioner characterizes my Order as stating that by the transfer of possession to the Birnbaum defendants "the relevance of the receivership to the instant action was rendered moot." In fact I held only that the transfer of possession to the Birnbaum defendants rendered moot their motion to dismiss. The Commissioner also asserts that his possession of the home as its receiver is the sole basis for HUD's complaint against him and that such possession having terminated there exists no reason for the continuance of this action against him.

Plaintiff does not oppose the Commissioner's motion to dismiss the Complaint.

The Birnbaum defendants, however, assert in their Memorandum in opposition to the Commissioner's motion to dismiss their cross-claims that the Commissioner's receivership continues for various purposes, including an accounting, and that the Commissioner is a necessary party to this action in order that complete relief may be afforded among the other parties.

 It appears at this time that the Commissioner's section 2810 receivership of the home does indeed continue for some purposes as was expressly recognized by the above-cited order of the New York Supreme Court. However, legal title to the property covered by the receivership is vested not in the Commissioner, but in the Estate of Bernard P. Birnbaum. Section 2810(2)(c) provides that the receiver appointed thereunder "shall have all the powers and duties of a receiver appointed in an action to foreclose a mortgage on real property." In New York, during a receivership of mortgaged premises, the legal title of the premises remains in the mortgager until passed at the foreclosure sale. *Greenwich Sav. Bank v. Samotas*, 17 N.Y.S.2d 772 (N.Y.Mun.Ct.1940). Thus section 2810(2)(h) provides that the appointment of a receiver does not "suspend during the receivership any obligation of the owner for the payment of taxes or other operating and maintenance expenses of the facility nor of the owner or any other person for the payment of mortgages or liens," although pursuant to section 2810(2)(e) the receiver is during the term of his husbandry ordinarily to see to the discharge of such obligations.

The Commissioner's receivership, without possession or responsibility for maintenance, is no bar to the provision of complete relief among the other parties and the Commissioner therefore is not a necessary party defendant to this lawsuit under Fed. R.Civ.P. rule 19(a). Whether the Commissioner may be liable to the Birnbaum defendants for the conduct of such receivership, as asserted in their cross-claims, is an entirely separate question and has no bear-

ing upon whether the Complaint should be dismissed as to the Commissioner. Accordingly, the Commissioner's motion for summary judgment dismissing the Complaint is hereby ORDERED granted.

Generally, the Birnbaum defendants' cross-claims charge the Commissioner with having conspired with plaintiff to permit the deterioration of the home, to let the HUD mortgage payments become hopelessly delinquent and to fail to provide adequate reimbursements to the Birnbaum defendants and to prior receivers as required by unspecified Medicaid provisions of the federal Social Security Act. The alleged conspiracy between the Commissioner and HUD had for its object the making possible for HUD to gain ownership of the home for far less than what its value had been prior to the beginning of the receiverships. The threatened foreclosure of HUD's mortgage is thus characterized as an impending deprivation of the Birnbaum defendants' property without due process of law, and the alleged denial of adequate reimbursements to them as a deprivation of a right secured by the United States Constitution and laws, both of which claims are sought to be asserted pursuant to 42 U.S.C. § 1983. The cross-claims also seek an award of $550,000 in attorneys' fees incurred in the Birnbaum defendants' efforts in administrative proceedings to recover sums owing to them due to the Commissioner's alleged failure to reimburse them as required by federal law. Judgments totalling in the millions of dollars are requested upon the claims for reimbursement and for damages anticipated from the foreclosure of HUD's mortgage.

■ The Commissioner argues that, in the absence of either an express consent to suit by a state or an express congressional authorization of a suit against a state pursuant to the Fourteenth Amendment, the Eleventh Amendment bars all suits by private citizens against states or state officers that seek to recover from the state treasury money damages for past misconduct. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). As the Com-

missioner points out, section 1983 does not authorize suits against a state that would otherwise be barred by the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

■ The Birnbaum defendants urge that section 17 of New York's Public Officers Law constitutes a consent by the State of New York to respond in damages to section 1983 claims. The relevant portions of section 17 read as follows:

"2. (a) * * * [T]he state shall provide for the defense of [a state] employee in any civil action or proceeding in any state or federal court arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties, or which is brought to enforce a provision of section nineteen hundred eighty-one or nineteen hundred eighty-three of title forty-two of the United States Code.

\* \* \* \* \* \*

"3. (a) The state shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court * * *.

\* \* \* \* \* \*

"9. Except as otherwise specifically provided in this section, the provisions of this section shall not be construed in any way to impair, alter, limit, modify, abrogate or restrict any immunity available to or conferred upon any unit, entity, officer or employee of the state or any other level of government * * * by, in accordance with, or by reason of, any other provision of state or federal statutory or common law."

*Trotman v. Palisades Interstate Park Com'n*, 557 F.2d 35 (2d Cir.1977), rejected an argument that the "sue-and-be-sued" clause of an interstate compact constituted a waiver by the States involved of the Eleventh Amendment's protection against being sued in federal court. The Court observed:

"In construing the sue-and-be-sued clause of this compact we rely upon the rationale of *Edelman v. Jordan, supra,* 415 U.S. at 673, 94 S.Ct. at 1360, where the Supreme Court said:

'In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." ' "

557 F.2d at 39.

The arguments advanced in favor of finding this rigorous test to have been met by section 17 as to claims under section 1983 are unpersuasive. It is clear that state employees may be held personally liable for their constitutional torts under section 1983 (*Scheuer v. Rhodes,* 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974)) and that the state employer is not obligated to respond for such torts on a theory of respondeat superior (*see, Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691–693, 98 S.Ct. 2018, 2036–2037, 56 L.Ed.2d 611 (1978)). Section 17 was obviously intended to make uniform the state's obligation to defend and indemnify its officers and employees when they are sued personally, which obligation had previously been assumed by piecemeal legislation relating to particular employments. *See Memorandum of Senator H. Douglas Barclay, reprinted in* [1978] *New York State Legislative Annual* 272. The law is obviously directed at protecting such persons from *personal* financial loss. *See, ibid.,* and *Brody v. Leamy,* 90 Misc.2d 1, 393 N.Y.S.2d 243, 261–62 (S.Ct., Duch.Co. 1977). By contrast, Eleventh Amendment immunity attaches when the action is essentially one for the recovery of money *from the state,* even though the state is not named in the complaint. *See Edelman v. Jordan, supra,* 415 U.S. at 663, 94 S.Ct. at 1355. There is no doubt that the cross-claims against the Commissioner (who is not named personally) seek essentially that huge damage awards be assessed against the Commissioner in his official capacity,

and hence against the state. This analysis is sufficient to demonstrate that section 17 is reasonably susceptible to interpretation other than that it waives New York's Eleventh Amendment immunity from suit in federal courts; hence there is no need to address other shortcomings in the Birnbaum defendants' arguments that the rigorous *Edelman* waiver test has been satisfied.

 Their argument that the Commissioner's appearance in and defense of this suit and the cross-claims interposed herein constitute a waiver of the Eleventh Amendment defense also lacks merit; such cannot be waived by the appearance of New York's Attorney General in the case and can be raised any time, even upon appeal, at least unless the Attorney General seeks to take advantage of the suit for the benefit of the state, or unless state law otherwise provides. *See Sosna v. Iowa,* 419 U.S. 393, 396 n. 2, 95 S.Ct. 553, 555 n. 2, 42 L.Ed.2d 532 (1975); *Ford Co. v. Dept. of Treasury,* 323 U.S. 459, 466–467, 65 S.Ct. 347, 351–352, 89 L.Ed. 389 (1945). It is true that New York's Court of Appeals has recognized that, by seeking to take advantage of a lawsuit for the benefit of the State, the Attorney General may waive the Eleventh Amendment defense. *Niagara Falls Power Co. v. White,* 292 N.Y. 472, 481, 55 N.E.2d 742 (1944), citing *Porto Rico v. Ramos,* 232 U.S. 627, 34 S.Ct. 461, 58 L.Ed. 163 (1914). However, the law of New York as announced by its highest court is that a mere general appearance by the Attorney General does not waive the immunity defense, even if such defense is not raised at an early stage of the action. *Niagara Falls Power Co. v. White, supra; Buckles v. State of New York,* 221 N.Y. 418, 117 N.E. 811 (1917). The Birnbaum defendants' argument that the Attorney General's appearance in and defense of this case on behalf of the Commissioner constitutes egregious conduct such that the Eleventh Amendment defense has been waived is unavailing. The Commissioner has consistently asserted the Eleventh Amendment as a defense herein and did not affirmative-

ly seek to be made a party to this action or to interpose any claims on behalf of the state. Too much is sought to be made of the mere delay (about one year) in his interposition of the instant motion to dismiss after the filing of the cross-claims; mere delay cannot constitute a waiver of the Eleventh Amendment, which may be raised for the first time even in the United States Supreme Court, the court of last resort.

■ The Birnbaum defendants' argument that a direct cause of action against a state may lie under the Fourteenth Amendment, notwithstanding the Eleventh Amendment, is of equal lack of merit. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), held that Congress may override the Eleventh Amendment by manifesting an explicit intent to do so in a statute enacted pursuant to the Fourteenth Amendment's enabling clause. In *Holley v. Lavine,* 605 F.2d 638, 648 (2d Cir.1979), the Court declined to rule on the same contention as is here presented by the Birnbaum defendants, noting that to accept this contention "would be a rather large extension of the Court's decision in *Fitzpatrick v. Bitzer [supra]* * * *." *See also Jagnandan v. Giles,* 538 F.2d 1166, 1182–85 (5th Cir.1976), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977); *Mauclet v. Nyquist,* 406 F.Supp. 1233 (W.D.N.Y.1976), *app. dismissed sub nom. Rabinovitch v. Nyquist,* 433 U.S. 901, 97 S.Ct. 2962, 53 L.Ed.2d 1086, *reh. denied,* 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977). Nothing in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), can reasonably be viewed as supporting a direct right of action against states under the Fourteenth Amendment, at least not so strongly as to persuade me to go further in this case than was deemed prudent in *Holley v. Lavine, supra.*

The Birnbaum defendants' sole remaining argument—that preservation of the cross-claims against the Commissioner is necessary to affording complete relief among the other parties—has already been decided in the negative. I see no great harm in relegating these defendants to the New York Court of Claims, wherein the State of New York has consented to be sued *(see, People v. Abbott Manor Nursing Home, supra,* 421 N.Y.S.2d at 454), for the prosecution of their constitutional claims against the Commissioner. Considerations of judicial economy are insufficient bases for the ignoring of the bar of the Eleventh Amendment.

■ Subsequent to oral argument in this case and briefing of the issues by the parties, the Birnbaum defendants' attorney by letter to this court urged that the Commissioner is being sued in the cross-claims as a legal entity separate and distinct from the Commissioner's state office, with sources of revenue distinct from the State treasury, so that the Eleventh Amendment is no bar to the cross-claims. I reject the notion that merely being appointed receiver of the home so separated the Commissioner from his public office that he is not to be viewed and treated as a state officer for purposes of the cross-claims. However, it is likely that the funds received in payment for goods and services provided by the home under the Commissioner's receivership have been maintained in a special account and separate from the state treasury, as required by section 2810(2)(f)(i) of New York's Public Health Law. The only claims raised by the Birnbaum defendants that would conceivably be compensable from such special account are those relating to the Commissioner's alleged failure properly to reimburse them as required by federal law during the receivership. Thus the Eleventh Amendment should pose no bar to this Court's jurisdiction over the reimbursement claims. *Cf. Edelman v. Jordan, supra,* 415 U.S. at 663, 666 n. 11, 94 S.Ct. at 1355, 1357 n. 11. These claims are not sufficiently related to the main action herein to support their being treated as third-party claims under Fed.R.Civ.P. rule 14(a), or as cross-claims under rule 13(g). Hence they must be dismissed, with-

out prejudice to their subsequent assertion in an independent lawsuit.

In accordance with the views expressed herein, defendant New York State Commissioner of Health's motion to dismiss the cross-claims of the Birnbaum defendants is hereby ORDERED granted.